# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

**BROOKSTONE CAPITAL MANAGEMENT, LLC and**
**DEAN ZAYED,**

**Petitioners,**

**v.**

**SWAN GLOBAL INVESTMENTS, LLC,**

**Respondent.**

---

**PETITION OF BROOKSTONE CAPITAL MANAGEMENT, LLC AND DEAN ZAYED TO CONFIRM FINAL ARBITRATION AWARD**

---

BROOKSTONE CAPITAL MANAGEMENT, LLC ("Brookstone") and DEAN ZAYED ("Zayed") (collectively, "Petitioners") Petition this Court to confirm the unanimous Final Award For Phase 1 entered by the three-member panel of the American Arbitration Association ("AAA") on January 24, 2018 against Respondent SWAN GLOBAL INVESTMENTS, LLC ("Swan"), and in support hereof state as follows:

**SUMMARY**

1. This Petition is made pursuant to 9 U.S.C. § 9 following the issuance on January 24, 2018 of the Final Award For Phase 1 (attached hereto as Exhibit 1) in favor of Petitioners by an AAA panel composed of Gordon W. Netzorg (Chair), Gregory B. Kanan, and Holly Stein Sollod (the "Panel") in the matter entitled *Swan Global Investments, LLC v. Brookstone Capital Management, LLC and Dean Zayed*, AAA Case No. 01-16-0004-9434.  The arbitration proceedings took place in Denver, Colorado under the Commercial Arbitration Rules And Mediation Procedures of the AAA, Amended and Effective October 1, 2013 ("AAA Rules").

2. The arbitration was bifurcated at the request of Swan into two distinct phases. The dispute between the parties in Phase 1 related to the proper amount of management fees that Swan should have charged and collected from Petitioners under the Advisor-Manager Agreement ("Agreement") between Zayed and Swan (the Agreement is attached hereto as Exhibit 2), pursuant to which Petitioners used the services of Swan and a proprietary investment method of Swan (called the Defined Risk Strategy ("DRS")) for investing Brookstone's client assets through separately managed accounts. Swan also alleged that Petitioners violated a Confidentiality/Non-Compete provision in the Agreement. At the request of Swan, and upon agreement by the parties, the Panel bifurcated the arbitration into two separate, distinct phases: Phase 1 would resolve *all* issues and claims relating to the dispute over management fees, while Phase 2 would resolve Swan's separate Confidentiality/Non-Compete claim. A hearing was held on the parties' Phase 1 claims, after which, on January 24, 2018, the Panel issued the Final Award For Phase 1, in which it found in favor of Petitioners on their breach of contract Counterclaim, and against Swan.

3. In the Final Award For Phase 1, the Panel granted a final award to Petitioners that includes a principal recovery of $554,321, together with prejudgment interest of $217,602 through November 9, 2018 (the date of the interim award in Phase 1[1]), for the amounts that Swan overcharged and collected from Petitioners beginning in 2012. (Ex. 1 at 12). The Panel also awarded Petitioners postjudgment simple interest at the rate of 8% on the damage amount from November 9, 2017 until collected (postjudgment interest continues to accrue at the rate of $121.50 per day since November 9, 2017), together with Petitioners' costs and attorneys' fees

---

[1] The Panel then instructed the parties to address the fees and costs to be awarded Petitioners as the prevailing party. Petitioners submitted a detailed fees/cost application, and reply to Swan's response. The Panel awarded Petitioners all of their requested attorneys' fees and costs, and almost all of their expert fees and costs.

incurred in collecting the Final Award For Phase 1. (*Id.*). In addition, the Panel awarded Petitioners $942,978 in attorneys' fees, expert fees, and costs they incurred in Phase 1. (*Id.*).[2] Petitioners now seek confirmation of the Panel's Final Award For Phase 1 and entry of a judgment against Swan so that Petitioners can commence collection.[3]

### PARTIES, JURISDICTION, AND VENUE

4. Petitioner Brookstone is a limited liability company organized under the laws of the State of Illinois and a Registered Investment Advisor ("RIA"). Brookstone's principal place of business is located at 1745 S. Naperville Road, Suite 200, Wheaton, Illinois 60189.

5. Petitioner Zayed is President and Chief Executive Officer of Brookstone and is a citizen of Illinois.

6. Respondent Swan is a limited liability company organized under the laws of the State of Delaware. Swan's principal place of business is located at 277 E. 3rd Avenue, Unit A, Durango, Colorado 81301.

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship and the amount in controversy is well in excess of $75,000.

---

[2] Under the agreement to bifurcate the proceedings, Swan would determine at the conclusion of Phase 1 whether to pursue its Claim under the Confidentiality/Non-Compete provision of the Agreement. On January 11, 2018, Swan submitted notice of its intention to proceed with that Claim as Phase 2 of the arbitration, and a scheduling order has been entered in connection therewith, setting the hearing on Phase 2 for the week of October 8, 2018.

[3] As an aside, Petitioners requested that Swan pay the Final Award For Phase 1 now without the need for Petitioners to seek confirmation and to pursue collection efforts. During the scheduling conference on Phase 2, Swan's new counsel (Swan has replaced its counsel from Phase 1) wrongly indicated that Petitioners' effort to pursue collection of the Final Award For Phase 1 is premature, and suggested that Swan did not intend to make payment at this time. As explained below (*see infra* ¶ 26), Swan's prematurity argument is without merit, and Petitioners are entitled to the immediate confirmation of the Final Award For Phase 1 and to payment in full of the amounts awarded, including continuing postjudgment interest and fees and costs associated with collection.

8.       Venue is proper in this judicial district pursuant to 9 U.S.C. § 9 in that the Final Award For Phase 1 was made in Denver, Colorado, which is located within this district.

## BACKGROUND

9.       Brookstone and Swan entered into the Agreement on December 31, 2011. Brookstone agreed to pay management fees to Swan according to a fee schedule set out in the Agreement. (Ex. 2 at 7−9). Of particular import regarding Phase 1, the Agreement specified that Petitioners would have the lowest contractual fee schedule of any RIA to which Swan offered DRS services. (*Id.* at 4–5).

10.      A "Confidentiality/Non-Compete" provision of the Agreement requires Petitioners to keep Swan's DRS system confidential and to not offer a specified competing investment strategy to Petitioners' clients. (*Id.* at 9).

11.      The Agreement also contains an "Arbitration/Attorney Fees" clause, which states, in its entirety:

> Any dispute relating to the validity, enforcement or interpretation of this Agreement shall be determined by final and binding arbitration. Such arbitration shall be conducted in Durango, Colorado according to the Securities Arbitration Rules then in effect of the American Arbitration Association [the parties agreed to hold the arbitration in Denver]. Both parties acknowledge that: (i) such arbitration will be final and binding on the parties, (ii) the parties are hereby waiving their rights to seek remedies in court, including the right to a jury trial, (iii) pre-arbitration discovery is generally more limited than and different from discovery conducted in connection with litigation, (iv) the arbitrator's award is not required to include factual findings or legal reasoning, and (v) a party's right to appeal or seek modification of rulings by the arbitrator will be strictly limited. Judgment upon arbitration awards may be entered in any court, state or federal, having jurisdiction. The prevailing party in any dispute arising out of or related to this Agreement shall be entitled to recovery of its reasonable costs and attorney fees, whether or not litigation was commenced, in addition to any other relief to which such party or parties may be entitled.

(*Id.* at 13).

12. On November 11, 2016, pursuant to the Agreement's arbitration provision, Swan filed a Demand For Arbitration with the AAA, in which Swan alleged that Petitioners committed "separate breaches" of the Agreement.

    a. First, Swan claimed that Petitioners failed to pay management fees purportedly owed to Swan under the Agreement.

    b. Second, Swan claimed that Petitioners breached the Confidentiality/Non-Compete provision of the Agreement.

13. On November 28, 2016, Petitioners submitted their Answer to Swan's Demand For Arbitration. Petitioners also submitted Counterclaims against Swan for breach of contract, breach of the implied duty of good faith and fair dealing, unjust enrichment, civil theft, declaratory judgment, and injunctive relief, as well as Cross-claims against Respondents Randall Swan and Robert Swan for violation of the Colorado Organized Crime Control Act.[4]

14. Petitioners' ultimate claim was predicated on violation by Swan since 2012 of the lowest contractual fee schedule provision in the Agreement, and then Swan's repeated denial of that fact when questioned by Petitioners. Petitioners sought the return of overcharged management fees paid to Swan.

15. On February 9, 2017, pursuant to the AAA Rules, the Panel held a preliminary hearing to address scheduling and organization of the proceedings. Following the hearing, on

---

[4] Once Petitioners confirmed in discovery that Swan had violated the lowest contractual fee schedule provision in the Agreement (Petitioners confirmed this through the production by Swan of Swan's agreement with another RIA and the production by that RIA of documents that Swan should have but did not produce in discovery (*see* Final Award For Phase 1 (Ex. 1) at 7 n.5), Petitioners filed an Amended Answer, Counterclaims, And Cross-claim in which they withdrew one of their other theories for recovery—i.e., violation by Swan of the DRS bps Fee Schedule provision of the Agreement. Petitioners did this well before the hearing and before depositions of Petitioners. Petitioners proceeded to hearing on the theory of violation by Swan of the lowest contractual fee schedule provision in the Agreement, and again the Panel found in favor of Petitioners and against Swan.

February 10, 2017, the Panel issued a Preliminary Hearing and Scheduling Order #1 ("Preliminary Hearing Order"), a copy of which is attached as Exhibit 3. Among other things, the Preliminary Hearing Order established a schedule for administration of the claims raised by the parties to the arbitration.

16. The parties agreed to bifurcate the proceedings into two separate phases at Swan's request. As provided in the Preliminary Hearing Order, the parties agreed that "[a]ll issues and claims *other than* Swan's claim regarding alleged breach of the confidentiality/non-compete provision . . . will be resolved in accordance with and pursuant to [the Preliminary Hearing Order]." (Ex. 3 at 2 (emphasis added)). Thus, Phase 1 of the arbitration would resolve *in their entirety* Swan's Claim of alleged nonpayment of management fees, as well as Petitioners' Counterclaims against Swan for overcharging of management fees and violation of the Agreement's lowest contractual fee schedule provision.

17. The Preliminary Hearing Order further provided that any discovery regarding Swan's Claim of alleged breach of the Confidentiality/Non-Compete provision would be held in abeyance until resolution of the issues and claims in Phase 1, at which point Swan would determine whether it wished to pursue its Claim under the Confidentiality/Non-Compete provision of the Agreement. (*Id.*).

18. An arbitration hearing of the Phase 1 claims commenced on September 5, 2017. On September 6, 2017, counsel for Swan requested a continuance of the hearing due to Hurricane Irma making landfall in Miami, the residence of Swan's lead counsel. Petitioners consented to the continuance. The Panel continued the hearing until October 30, 2017, which concluded on November 2, 2017. Prior to and during the hearing, the parties submitted to the Panel documentary evidence, deposition testimony, and oral and written argument.

19.     On January 24, 2018, the Panel issued the Final Award For Phase 1. The Panel rejected Swan's breach of contract Claim and found in favor of Petitioners on their breach of contract Counterclaim. (Ex. 1 at 12). In reaching this determination, the Panel "considered the credibility of the witnesses, assessed the weight to be given to the documentary evidence and testimony of both fact and expert witnesses, and closely attended to the Parties' oral and written arguments." (*Id.*).

20.     The Panel's Final Award For Phase 1 grants Petitioners damages, fees, and costs as follows:

   a.     The Panel awarded Petitioners damages against Swan in the amount of $554,321, plus prejudgment interest at 8% totaling $217,602 through November 9, 2017—the date of the interim award on Phase 1. Petitioners also are entitled to simple postjudgment interest on the damages at the rate of 8% from November 9, 2017 until collected, and are further entitled to recover their costs and attorneys' fees incurred in collecting the Final Award. (*Id.*).

   b.     The Panel determined that Petitioners were the prevailing party to the arbitration. Accordingly, pursuant to the terms of the arbitration provision of the Agreement, the Panel awarded Petitioners attorneys' and expert fees and costs in the amount of $942,978. (*Id.*).

   c.     The Panel also awarded Petitioners fees of the arbitrators and fees of the AAA, in the total amount of $84,181.85, consisting of the following: AAA fees of $14,700 per party; fees of the arbitrators of $69,431.25 per party; and arbitrator expenses of $50.60 per party. (*Id.* at 12−13).

21. The Final Award granted to Petitioners by the Panel for Phase 1 is final and definite. The Panel's decision states: "This Final Award resolves all claims which have been submitted to this arbitration for resolution, with the exception of any claims [Swan] may pursue relating to alleged breach of the confidentiality/non-compete provision of the Agreement, consistent with the parties agreement to bifurcate [the arbitration]." (*Id.* at 13).

## CONFIRMATION PURSUANT TO THE FEDERAL ARBITRATION ACT

22. Under 9 U.S.C. § 9, the Court must grant an application for an order to confirm an arbitration award unless the award is vacated, modified, or corrected as prescribed under 9 U.S.C. §§ 10–11.

23. Petitioners' application is timely because it is brought within one year of January 24, 2018, the date on which the award was made. *See* 9 U.S.C. § 9.

24. A district court is empowered to confirm and enter judgment on an arbitration award where independent federal jurisdiction exists and the parties have agreed that the arbitration award would be subject to judicial confirmation. *Id.*

    a. Here, independent federal jurisdiction exists under 28 U.S.C. § 1332.

    b. The Agreement provides that the arbitrator's award will be "final and binding on the parties" and that "[j]udgment upon arbitration awards may be entered in any court, state or federal, having jurisdiction." (Ex. 2 at 13).

    c. Further, Rule R-52(c) of the AAA Rules governing the arbitration proceedings here states: "Parties to an arbitration under these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." *Commercial Arbitration Rules and Mediation Procedures* (2016), https//www.adr.org/sites/default/files/commercial_rules.pdf (last visited Feb. 5, 2018).

25.     The award granted to Petitioners by the Panel is final and definite.

a.     The Preliminary Hearing Order states that the parties agreed to bifurcate the proceedings and that Phase 1 would resolve all issues and claims between the parties other than Swan's separate and distinct Confidentiality/Non-Compete claim. (Ex. 3 at 2).

b.     At the conclusion of Phase 1, the Panel issued a Final Award For Phase 1 that "resolves all claims which have been submitted to [the] arbitration for resolution, with the exception of any claims Claimant may pursue relating to the [purported] breach of the confidentiality/non-compete provision of the Agreement," and awarded Petitioners a definite sum of damages, fees, and costs. (Ex. 1 at 12−13).

26.     Swan's recent argument that the Court cannot confirm the Final Award For Phase 1 until the conclusion of Phase 2 is without merit and contrary to established law. *See Eurolines Shipping Co. v. Metal Transp. Corp.*, 494 F. Supp. 590, 591–92 (S.D.N.Y. 1980) (an award that "finally and definitively disposes of a separate, independent claim may be confirmed notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration" (citation and internal quotation marks omitted); the court rejected the very same prematurity argument Swan made here during the scheduling conference for Phase 2 and granted Eurolines' petition to confirm the arbitration award in its favor notwithstanding the unresolved, distinct remaining claim by Eurolines' opponent). As explained above, and as found by the Panel, the issues is Phase 1 and Phase 2 are entirely independent, and the Panel's Final Award For Phase 1 "finally and definitely disposes of a separate, independent claim." *Id.*

27.     Accordingly, the Court is empowered to confirm and enter judgment on the Final Award For Phase 1.

**REQUEST FOR RELIEF**

WHEREFORE, Petitioners respectfully request that the Court enter judgment in favor of BROOKSTONE CAPITAL MANAGEMENT, LLC and DEAN ZAYED, and against SWAN GLOBAL INVESTMENTS, LLC, in the full amount set forth in the Final Award For Phase 1, together with the additional postjudgment interest and attorneys' fees and costs to be proved herein.

Respectfully submitted,

Date: February 6, 2018      By:   */s/ Kevin D. Evans*
                                  Kevin D. Evans
                                  ARMSTRONG TEASDALE LLP
                                  4643 South Ulster Street, Suite 800
                                  Denver, CO 80237
                                  (720) 200-0676
                                  (720) 200-0679 – Fax
                                  kdevans@armstrongteasdale.com

                                  and

                                  Henry M. Baskerville
                                  FORTIS LAW PARTNERS, LLC
                                  1900 Wazee Street, Suite 300
                                  Denver, CO 80202
                                  Telephone:  (303) 565-8066
                                  Facsimile:  (303) 295-9701
                                  hbaskerville@fortislawpartners.com

                                  Attorneys for Petitioners
                                  BROOKSTONE CAPITAL MANAGEMENT, LLC
                                  and DEAN ZAYED