**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-00295-RM

BROOKSTONE CAPITAL MANAGEMENT, LLC,
and DEAN ZAYED

Petitioners,

v.

SWAN GLOBAL INVESTMENTS, LLC,

Respondent.

---

**RESPONDENT'S OBJECTIONS TO THE MAGISTRATE'S
REPORT AND RECOMMENDATION**

---

Pursuant to Federal Rule of Civil Procedure 72(b), Respondent Swan Global Investments,

LLC ("Respondent" or "Swan") respectfully submits the following objections to the June 21,

2018 Report and Recommendation of Magistrate Michael J. Watanabe (the "Recommendation")

[ECF no. 21].

## I.   INTRODUCTION

Swan filed a Demand for Arbitration with the American Arbitration Association on

November 11, 2016, alleging that (1) Petitioners failed to pay management fees due under an

Advisor-Manger Agreement ("Agreement") between the parties, and (2) Petitioners breached a

Confidentiality/Non-Compete provision in the Agreement.  [ECF No. 3, Phase 1 Award, 1-2]

Petitioners filed Counterclaims on November 28, 2016, including a claim for breach of the

Agreement and several equitable and tort claims.  *Id.*  At a preliminary hearing on February 9,

2017, both parties agreed to bifurcate the proceedings:  Phase 1 would resolve Swan's claim for

failure to pay management fees and all of Petitioners' counterclaims; Phase 2, in turn, would address Swan's claim for breach of the Confidentiality/Non-Compete provision. *Id*. The parties never agreed to, and indeed never contemplated, interlocutory judicial review of the Phase 1 Award.

The arbitration panel issued its Phase 1 Award on January 24, 2018. *Id*. The Phase 2 hearing is set for December 10-14, 2018.

Petitioners seek confirmation of the Phase 1 Award from this Court. Because the Phase 1 Award will not be ripe for review until Phase 2 is completed and all claims in the arbitration are fully and finally resolved, Swan moved to dismiss the Petition to Confirm.

Magistrate Watanabe Recommends that this Court deny Swan's Motion to Dismiss. *Id*. The Recommendation reaches this conclusion solely because the Phase 1 Award definitively resolves one of the claims at issue in the arbitration. *Id.* at 6. According to the Recommendation, this outweighs any consideration of hardship, and dictates that the Petition is ripe for review. *Id*. at 7.

The Recommendation's conclusion is erroneous for three reasons.

*First*, the Recommendation conflates the ripeness and finality inquiries, which are separate and distinct. The Recommendation holds that if a ruling is "final," it is "fit for review" and therefore necessarily ripe. But because *any* order must be "final" to be subjected to judicial review under the Federal Arbitration Act ("FAA"), this conclusion effectively moots the ripeness inquiry—contrary to Supreme Court precedent. If the Recommendation appropriately applied the ripeness inquiry, it would dictate that the Petition is not ripe, because there is no dispute that Petitioners will suffer no hardship if the Petition is dismissed.

2

*Second*, and in any case, in determining that the award is "final," the Recommendation further errs by failing to consider Tenth Circuit precedent and misapplying precedent from the District of Colorado. Whether the FAA authorizes review of arbitration awards that do not fully and finally resolve all claims submitted to arbitration is an open question in the Tenth Circuit, but both Tenth Circuit and District of Colorado case law disfavor such review.

*Third,* the Recommendation summarily dismisses important public policy considerations favoring dismissal that resound beyond the parties to this case.

For each of these reasons, this court should reject the Recommendation and grant Swan's Motion to Dismiss.

## II. STANDARD OF REVIEW

This Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The court is free to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge." *Id*.; *see also Santistevan v. Stengink*, 2016 WL 1388018, *1 (D. Colo. April 8, 2016) (Moore, J.).

## III. OBJECTIONS

A. **The Phase I Award is Not Ripe for Review**

Magistrate Watanabe's Recommendation correctly notes that the ripeness doctrine is an important prudential limitation on the court's exercise of jurisdiction. [ECF no. 21, 4]. And prudence dictates that this Court grant Swan's Motion to Dismiss in this case and defer consideration of any Petition to Confirm the arbitration award until the arbitration is complete.

The Supreme Court established in *Stolt-Nielson S.A. v. AnimalFeeds International Corp.* that a federal court must determine whether an interlocutory arbitration award is ripe for judicial

review before taking jurisdiction over confirmation proceedings.  130 S. Ct. 1758, 1767 n.2 (2010); *see also Savers Property and Cas. Ins. Co. v. National Union Fire Ins. Co.*, 748 F.3d 708, 722 (6ᵗʰ Cir. 2014) ("ripeness is a necessary condition to confirming or vacating an interlocutory arbitral ruling . . ."); *Jones v. TitleMax of Missouri, Inc.*, 2017 WL 2556965, *2 (E.D. Mo. June 12, 2017) ("In addition to being final, the United States Supreme Court held that an interlocutory arbitration award must be ripe for judicial review.").

As the Supreme Court explained in *Stolt-Nielsen*, "ripeness reflects constitutional considerations that implicate Article III limitations on judicial power, as well as prudential reasons for refusing to exercise jurisdiction."  130 S. Ct. at 1767 n.2 (internal quotations omitted); *see also Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1157 (10th Cir. 2013) (same).  If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.  "In evaluating a claim to determine whether it is ripe for judicial review, we consider both the fitness of the issues for judicial decision and the hardship of withholding court consideration."  *Id*.; *see also Southern Utah*, 707 F.3d at 1158 (same).

The Tenth Circuit has not yet confronted a petition for interlocutory review of an arbitration award post-*Stolt-Nielson*.  Courts that have, however, have focused primarily on whether the petitioner could demonstrate significant hardship if judicial review was postponed until the arbitration concluded.  *See, e.g.*, *Dealer Computer Servs., Inc. v. Dub Herring Ford*, 623 F.3d 348, 354 n.3 (6ᵗʰ Cir. 2010) ("*DCS*") ("we note . . . that *Stolt-Nielson* confirms that judicial review of an interim arbitration award is available only if ripeness is established through the requisite showing of hardship."); *Jones*, 2017 WL 2556965 at *3 ("the Court finds that the partial award is not ripe for judicial review because TitleMax did not, and cannot, establish any

viable hardship it would suffer if the Court declined review of the arbitrator's partial award."). For example, in *DCS*, the Sixth Circuit upheld the district court's determination that a "Partial Final Class Determination Award" was not ripe for judicial review because petitioner would have the opportunity to confirm the interim award after the arbitration concluded: "DCS has neither argued nor cited any authority for the proposition that judicial review of the final award would not afford opportunity for review of earlier issued interim awards integral to the final award. DCS has thus failed to show that withholding of judicial review of the arbitration panel's favorable class determination award at this stage poses any imminent risk of cognizable harm in this case." *Id.* at 357-358.

It is undisputed that Petitioners will suffer no cognizable harm if they wait until Phase 2 of the arbitration is complete before seeking confirmation of the Award. Thus, the Petition is not ripe.

The Recommendation correctly acknowledges that (1) the ripeness of the Petition is a threshold issue the Court must consider before taking jurisdiction, and (2) both the fitness of the issue for judicial decision and the hardship of withholding court consideration are factors in determining whether the Petition is ripe. [ECF No. 21, 4-5] But the Recommendation then skips over the threshold question, and jumps straight to the question of whether the Award is "final" under the FAA. *Id.* at 5-7. After determining (incorrectly, as described in Section III.B below) that the Award is "final," the Recommendation then concludes that Award is therefore necessarily ripe for review and that any hardship inquiry is irrelevant:

> "[U]nder the FAA, if the Court determines that it has jurisdiction that (sic) the Panel issued a final award, it must grant the Petition, unless Respondent argues that the Award should be vacated modified or corrected. *See* 9 U.S.C. § 9. This imperative outweighs

any consideration of potential hardships.  Accordingly, the Court finds that (sic) Phase 1 Award is final and ripe for review."

*Id*. at 7.

This analysis is erroneous for at least two reasons.  First, it puts the cart before the horse. The fact that the Court must confirm (or vacate or modify) the award *if* the Court finds it has jurisdiction cannot be the basis for overriding the inquiry in whether the Court has jurisdiction in the first place.  If the Court does not have jurisdiction because the Petition is not ripe, there is no imperative at all.

Second, the Recommendation's determination that if an Arbitration Award is final, it is therefore ripe, is necessarily wrong because it moots any ripeness inquiry.  Ripeness and finality are both necessary requirements for judicial review of an arbitration award.  *See, e.g., Savers Property and Cas. Ins. Co. v. National Union Fire Ins. Co.*, 748 F.3d 708, 722 (6th Cir. 2014) ("ripeness is a ***necessary condition*** to confirming or vacating an interlocutory arbitral ruling . . .") (emphasis added); *Jones v. TitleMax of Missouri, Inc.*, 2017 WL 2556965, *2 (E.D. Mo. June 12, 2017) ("***In addition to being final,*** the United States Supreme Court held that an interlocutory arbitration award must be ripe for judicial review.") (emphasis added).  As the Recommendation correctly points out, finality is a prerequisite for the Court to confirm *any* arbitration award under the FAA.  ECF no. 21, 4 (quoting *Int'l Label Serv., Inc. v. Engineered Data Prod., Inc.,* 15 F. App'x 717, 719 (10th Cir. 2001) ("the arbitration award sought to be confirmed must be final.").  If "finality" were sufficient to render an award "fit for review" and override the question of hardship, as the Recommendation determines, Courts would *never* need to undertake a separate ripeness inquiry.  The Recommendation therefore conflicts with every decision, including the Supreme Court's decision in *Stolt-Nielson* and all those that follow it, that

applies a ripeness analysis when determining whether to take jurisdiction over a petition to confirm an arbitration award.

The Recommendation also states that Swan tries to "circumvent" the question of whether the Petition is fit for review by "labeling the Petition as a request for an interlocutory review." But the Phase 1 Award is "interlocutory."  Black's Law Dictionary defines an "interlocutory" order as an "interim or temporary [order]; ***not constituting a final resolution of the whole controversy***."  Without dispute, the Phase 1 Award does not constitute a final resolution of the whole controversy.  If it did, and the arbitration were wholly resolved, the hardship imposed on Petitioners if the Court dismissed the Petition would be obvious:  Petitioners would have no recourse.  Indeed, it is *because* the Award is interlocutory that Petitioners suffer no hardship.  At the conclusion of the arbitration, when there is final resolution of the whole controversy, Petitioners (and Swan) will have full opportunity, if necessary, to petition this Court to confirm, modify, or vacate the Award as appropriate.

At this stage of the case, however, in the midst of the Phase 2 arbitration and with no dispute that Petitioners will suffer no hardship from waiting to petition the Court to confirm the Phase 1 Award until Phase 2 is complete, the Court need not and should not intervene.  The Petition is not ripe and the Court should dismiss it.

**B.      The FAA Does Not Authorize Judicial Review of the Phase 1 Award Because It is Not Final.**

Moreover, separate and apart from skirting the ripeness inquiry, in determining that the award is "final" because it fully resolves one claim, the Recommendation fails to properly consider relevant Tenth Circuit precedent applying the FAA, and misapplies case law from the District of Colorado.

7

Courts are generally skeptical of Court involvement when arbitration proceedings are

ongoing.

> The FAA . . . contemplate[s] only two stages at which courts may become involved in arbitration proceedings. At the outset of any dispute, the laws authorize courts to decide certain gateway matters of arbitrability, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy. Then, at the conclusion of an arbitration proceeding, courts are authorized to enter an order confirming, vacating, or modifying the award, but even so, awards may be disrupted only under narrow circumstances.

> Between these two stages, however, the laws are largely silent with respect to judicial review. Over the years, our court and several of our sister circuits have interpreted that silence and the overall structure of the FAA to preclude the interlocutory review of arbitration proceedings and decisions.

*Savers Property*, 748 F.3d at 717-18 (internal citations and quotations omitted).  In short, as

Judge Easterbrook succinctly stated, "Review comes at the beginning or the end, but not in the

middle" of arbitration.  *Blue Cross Blue Shield of Mass., Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638

(7th Cir. 2011).

Although interlocutory appeal has always been disfavored, before the Supreme Court

shifted the focus to ripeness and hardship in *Stolt-Nielson*, a few federal circuits (not including

the Tenth Circuit) permitted judicial review of interlocutory arbitration awards under specific

circumstances.  Justice Ginsberg described this circuit split in her dissenting opinion in *Stolt-*

*Neilson*:

> Lacking this Court's definitive guidance, some Courts of Appeals have reviewed arbitration awards 'finally and definitely dispos[ing] of a separate independent claim.' Others have considered 'partial award[s]' that finally 'determin[e] liability, but . . . not . . . damages.'  Another confirmed an interim ruling on a 'separate, discrete, independent, severable issue' . . .

> Receptivity to review of preliminary rulings rendered by arbitrators, however, is hardly universal . . .

130 S.Ct. at 1779 (internal citations omitted).

The Recommendation bases its conclusion that the Phase 1 Award is "final" on one such case from the Sixth Circuit—*DCS*—stating that "[a] final award deciding the merits of the dealers' breach of contract claims would clearly be subject to confirmation under the [FAA, b]ut the subject class determination is clearly not final."  [ECF no. 21, 6]  *DCS* itself, as referenced above, dismissed the Petition at issue as not ripe for judicial review.  But *DCS* does also distinguish a prior Sixth Circuit case, *Island Creek Coal Sales Co. v. City of Gainesville, FL*, 729 F.2d 1046 (6th Cir. 1984), upholding confirmation of an arbitration award resolving "a separate and independent claim."[1]

Although the Tenth Circuit has not directly addressed the issue, there is good reason to believe the Tenth Circuit would disagree with circuits, such as the Sixth Circuit, permitting review of arbitration awards "disposing of a separate independent claim," and would instead align itself with those who disfavor interlocutory review.  The Tenth Circuit has taken a harder

---

[1]  Notably, the *DCS* court rejected the petitioner's attempt to avoid a ripeness analysis by drawing an analogy to *Island Creek*.  In a footnote, the *DCS* decision squares *Island Creek* with *Stolt-Neilson* and clarifies that ripeness was a key consideration in *Island Creek* as well: "Although ripeness was not expressly addressed in *Island Creek*, if it had been, the three ripeness factors set forth in *Dealer Computer Services*, 547 F.3d at 561, would most assuredly have been deemed satisfied.  In other words, even though the term 'ripeness' was not expressly used to explain why the interim award was deemed subject to confirmation, it was implicitly considered as a factor.  *See also Hall Steel Co. v. Metalloyd Ltd.*, 492 F. Supp. 2d 715, 719–20 (E.D. Mich. 2007) (distinguishing *Island Creek* and observing that federal courts generally overcome their usual resistance to piecemeal confirmation of interim awards only where there is some compelling need for immediate relief)." *DCS,* 623 F.3d at 352 n2.

The three ripeness factors set out in *DCS* are "(1) the likelihood that the harm alleged by a party will ever come to pass; (2) the hardship to the parties if judicial relief is denied at this stage in the proceedings; and (3) whether the factual record is sufficiently developed to produce a fair adjudication of the merits."  *Id*. at 351.

In short, contrary to the Recommendation's position that an award finally resolving a separate and independent claim is necessarily "fit for review" and ripe, *DCS* goes out of its way to confirm the exact opposite: harm and hardship to the petitioner is and was always a consideration, even in pre-*Stolt-Neilson* cases in the Sixth Circuit seeking confirmation of awards "finally" resolving the merits of "separate and independent claims."

line in limiting the availability of judicial review under the Federal Arbitration Act than other circuits—including the Sixth Circuit.  [*See* ECF No. 17, 7-9].  For example, the Sixth Circuit more recently acknowledged the possibility that, given the contractual nature of arbitration, party consent to interlocutory review might provide an independent basis for allowing judicial review under the FAA.  *Savers*, 748 F.3d. at 721-22 ("[R]ipeness alone is not a sufficient condition for interlocutory judicial review of arbitral decisions.  Absent express or implied consent in the underlying agreement to arbitrate, federal courts may not graft a provision for interlocutory judicial review onto the otherwise straight-forward regime contemplated by the FAA.") (emphasis added).  But the Tenth Circuit decision in *Bowen v. Amoco Pipeline Co.* strongly suggests that even party consent would not be sufficient to permit interlocutory review under the FAA. 254 F.3d 925, 934 (10th Cir 2001) (". . . parties may determine by contract what issues to arbitrate and what rules will govern arbitration, but no authority clearly allows private parties to determine how federal courts review arbitration awards.").  Thus, there is good reason to infer that the Tenth Circuit would not favor review of partial awards resolving some, but not all, claims submitted to arbitration.

`       Indeed, the only other case the Recommendation cites in support of its conclusion that the Phase 1 Order is "final" under the FAA, is in fact consistent with this interpretation of Tenth Circuit case law—and directly contrary to the Recommendation's position.  The Recommendation cites *Ernest v. Lockheed Martin Corp*., 2010 WL 3516639, *1 (D. Colo. Sept. 1, 2010), in support of the proposition that the Phase 1 Award is final, quoting *Ernest*'s statement that "[n]o further litigation is necessary to finalize the obligations of the parties under this award."  [ECF no. 21, 6]  But the full quote from *Ernest* states: "The arbitrator must ***resolve all***

*issues submitted to the arbitration*, and *determine each issue fully* so that no further litigation is necessary to finalize the obligations of the parties under the award." *Id*. (determining that the relevant arbitration award was not sufficiently final to sustain judicial review) (emphasis added); *see also Fisher v. Gen. Steel Domestic Sales, LLC*., 2011 WL 5240372 (D. Colo. Oct. 31, 2011) (same).

In this case, of course, the arbitrators have no yet resolved all issues submitted to the arbitration. Accordingly, because the Phase 2 arbitration remains pending, the Phase 1 Order is not "final" and therefore not subject to judicial confirmation under the FAA.

## C.    Judicial Review of the Phase 1 Award is Not Consistent with Public Policy

Finally, in accord with the Supreme Court's ripeness requirements and the Tenth Circuit's and District of Colorado's interpretation of the FAA, unnecessary interlocutory review of arbitration awards is inconsistent with the FAA's purpose: namely, supporting arbitration as an inexpensive and efficient means to resolve disputes outside the court system.

As the Tenth Circuit stated in *Bowen*, "the FAA's narrow [review] standards reflect the Supreme Court's well-established view of the relationship between arbitration and judicial review: '[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" 253 F.3d at 935 (*quoting Gilmer v. Interstate/Johnson Lane Corp.*, 111 S.Ct. 1647 (1991)). Numerous courts have acknowledged that interlocutory appeal of arbitration awards is inconsistent with that purpose. *See*, *e.g.*, *Savers*, 748 F.3d at 718 ("there are sound policy reasons—all of which support the purposes underlying the FAA—for generally withholding judicial review until the conclusion of an arbitration proceeding") (collecting cases). As Judge Feinberg explained in

dissenting from the Second Circuit's pre-*Stolt-Nielson* decision allowing interlocutory review of "separate and independent" claims:

> Just as piecemeal review disrupts and delays ongoing litigation in the courts, confirmation of partial awards will inevitably interrupt and extend arbitration proceedings. It will make arbitration more like litigation, a result not to be desired. It would be better to minimize the number of occasions the parties to arbitration can come to court; on the whole, this benefits the parties, the arbitration process and the courts.

*Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 285 (2nd Cir. 1986) (internal citations omitted).

Further, in addition to increasing time and expense, allowing for premature confirmation in bifurcated cases creates other potential difficulties.  For example, if one party can seek confirmation of a first-phase order in a bifurcated arbitration, that effectively forces the other party to seek to modify or vacate at the same time, even though the second phase of the arbitration is pending.  Given that the primary grounds for vacating an arbitration order are arbitrator partiality, arbitrator misconduct, or the arbitrator exceeding their authority, see 9 U.S.C. § 10 (a)(2)-(4), this puts respondents to the difficult choice of whether to challenge the arbitrator's conduct while (1) the conduct is potentially not complete, and (2) the arbitrator is still in control of respondents' case.  Unsurprisingly, Courts have held that such a challenge is not appropriate mid-arbitration.  *See Savers*, 748 F.3d at 720 (citing cases holding that "challenge(s) to the fairness of an arbitration proceeding or the partiality of an arbitrator" should not be considered before the arbitrator issues its final award).  But respondents would risk waiving arguments supporting vacatur if courts engaged in judicial review of interlocutory arbitration awards, as the Recommendation suggests this Court should do here.

Indeed, the Recommendation would effectively ensure that Courts will see more Petitions mid-arbitration because petitioners will otherwise risk waiving their rights under the FAA to challenge an arbitration award entirely.  The FAA requires parties to serve notice of any motion to vacate, modify, or correct an award within three months after the award is filed or delivered. 9 U.S.C. § 12.  Parties seeking confirmation, however, may take up to a year.  9 U.S.C. § 9. Accordingly, in bifurcated cases, parties successful in the first phase will be incentivized to file confirmation petitions 3-12 months after the award is filed.  It the Court takes jurisdiction, and deems the award from the first phase award "final," the unsuccessful parties' right to seek modification or vacatur might be waived as untimely.  To avoid this risk, unsuccessful parties in bifurcated cases will be compelled to seek for modification or vacatur of any phase 1 award within the first three months, even if the petition could otherwise wait until the arbitration concludes, if the unsuccessful party believes there is any chance a court *might* deem the award final and reviewable.  In short, if adopted, the Recommendation promises to bring additional, unnecessary petitions to modify, vacate, and/or confirm arbitration awards into court.

The Recommendation dismisses these policy concerns out of hand, simply stating that "Respondent should have considered this before it agreed . . . that the claims be bifurcated and arbitrated in two wholly separate proceedings."  But agreeing to bifurcate a case and agreeing to interlocutory review of the Phase 1 Award are, of course, two different things.  *See Peabody Holding Co., LLC v. United Mine Workers of America*, 815 F.3d 154, 161 (4th Cir. 2016) ("That the parties agreed to bifurcate their arbitration proceedings does not change the fact that they also agreed to submit the entire dispute—both the liability and remedies questions—to arbitration . . . There is nothing unjust about a decision to withhold review until the arbitrator has completed

both segments of the whole task that was given to him."). Swan did not agree to premature confirmation proceedings.

More importantly, these policy considerations are not limited to the immediate case. Unnecessary judicial review generally undermines the purpose of arbitration by introducing complexity and formality, reducing efficiency, and increasing expense. Interlocutory judicial review therefore should not be permitted unless necessary. The Recommendation encourages additional petitions in bifurcated arbitrations when the policy underlying arbitration favors the reverse.

### Conclusion

As described above, the Recommendation is inconsistent with governing law and public policy and this Court should reject it. Instead of adopting the Recommendation, this Court should dismiss the Petition. The Petition is not ripe for review under Supreme Court precedent because Petitioners face no imminent risk of cognizable hardship. Moreover, even if Petitioners did face hardship and the claim was constitutionally ripe, interlocutory appeal is not authorized under the FAA as interpreted and applied by in the Tenth Circuit. Finally, granting Petitioners' request for review would undermine the goals that encouraged the parties to agree to arbitration in the first place: simple, informal, and efficient resolution of their disputes.

Accordingly, Swan respectfully requests that this Court reject the Magistrate's Recommendation and grant Respondent's Motion to Dismiss the Petition to Confirm.

Dated: July 5, 2018                    Respectfully submitted,


                                       *s/ Robert C. Blume*
                                       Robert C. Blume
                                       M. Scott Campbell
                                       GIBSON DUNN & CRUTCHER LLP
                                       1801 California Street, Suite 4200
                                       Denver, Colorado 80202-2642
                                       Telephone:   303.298.5700
                                       Facsimile:    303.313.2846
                                       Email: RBlume@gibsondunn.com
                                       Email: SCampbell@gibsondunn.com

                                       *Counsel for Respondent Swan Global Investments,*
                                       *LLC*

**CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on July 5, 2018, I electronically filed the foregoing Objections to the Magistrate's Report and Recommendation with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Kevin D. Evans
Armstrong Teasdale LLP
4643 South Ulster Street, Suite 800
Denver, CO 80237
720-200-0676
kdevans@armstrongteasdale.com

Henry M. Baskerville
Fortis Law Partners LLC
1900 Wazee Street, Suite 300
Denver, CO 80202
303-295-9700
hbaskerville@fortislawpartners.com


_____ /s/ *Erin Mumford* _____
Erin Mumford

16